# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR SANTAMARIA MUNIZ, CDCR # AA-4341,<br><br>          Plaintiff,<br><br>v.<br><br>D. PARAMO and J. CUEVAS,<br><br>          Defendants. | Case No.: 3:19-cv-02051-BAS-BGS<br><br>**ORDER:**<br><br>**1) GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS PURSUANT TO 28 U.S.C. § 1915(a) [ECF No. 2]**<br><br>**AND**<br><br>**2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b)** |

   Plaintiff Cesar Santamaria Muniz, a prisoner at Salinas Valley State Prison in Soledad, California, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that Warden D. Paramo and Lieutenant J. Cuevas violated Plaintiff's Fifth and Fourteenth Amendment rights during prison disciplinary proceedings that occurred while Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD") in San Diego,

California. (*See* "Compl.," ECF No. 1.)

Plaintiff did not pay the fee required by 28 U.S.C. § 1914(a) when he filed his Complaint, instead filing a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (*See* ECF No. 2.)

## I. Plaintiff's Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Oct. 1, 2019)). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff submitted a certified copy of his trust account statement pursuant to 28 U.S.C. § 1915(a)(2) and Local Rule 3.2. The Court has reviewed Plaintiff's trust account activity, as well as the attached prison certificate verifying his available balances. (*See* ECF No. 2, at 4–7.) These documents show that although Plaintiff carried an average monthly balance of $1.71 and had $3.77 in average monthly deposits to his trust account for the six months preceding the filing of this action, he had an available balance of just $0.02 at the time of filing. (*See id.* at 4–6.)

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) but declines to impose the initial $0.37 partial filing fee pursuant to 28 U.S.C. § 1915(b)(1) because his prison certificate indicates he may currently have "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Instead, the Court directs the Secretary of the CDCR, or his designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

II. **Initial Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A**

A. **Standard of Review**

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes,

the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

/ / /

### B. Factual Allegations

Plaintiff's Complaint focuses on disciplinary proceedings that began after a search of the cell Plaintiff shared with another inmate allegedly turned up a cell phone and two inmate-created weapons hidden in Plaintiff's mattress. (*See* Compl. ¶ 3.) After the search, Plaintiff and his cellmate were taken to administrative segregation. (*Id.*) Although the district attorney declined to prosecute, both Plaintiff and his cellmate were served with notice of disciplinary proceedings. (*Id.* ¶¶ 5–6.)

Plaintiff maintains that the weapons and cell phone were not his and that, if Defendants had followed certain procedures requiring that cell bed areas be searched prior to occupancy, "the alleged contraband would have been found [before Plaintiff moved in] and [Plaintiff] would not have been fals[e]ly placed in [administrative segregation]." (*Id.* ¶¶ 25–26 (citing prison operational procedures governing cell searches).) Attempting to prove that these procedures were not followed, Plaintiff requested access to log books that show when cell searches occurred. (*See id.* ¶¶ 5, 7; *see also id.* ¶ 33 (arguing that the documents Plaintiff requested "would . . . prove the mattresses were provided by officials pri[o]r to the . . . search").) Plaintiff also alleges that he asked to question witnesses, although he does not state whose testimony he sought. (*See id.*) These requests were initially made through the investigative employee assigned to assist Plaintiff, but Plaintiff also asserts that he submitted a form directly to a non-party prison official requesting unspecified evidence. (*See id.* ¶ 5.) Although the exact sequence of events is somewhat unclear, Plaintiff asserts that the investigative employee did not "[f]ollow through" with Plaintiff's requests for evidence, and that Plaintiff never received a response to the form he submitted. (*See id.* ¶¶ 7, 10.)

According to Plaintiff's Complaint, at the hearing, Plaintiff restated his request to question witnesses and review log books, which were denied by the hearing officer, Defendant Cuevas, because the requests were irrelevant. (*See id.* ¶ 10.) Cuevas found Plaintiff guilty, allegedly stating that he was "going to find [Plaintiff] [g]uilty e[i]ther way"

because, between Plaintiff and his cellmate (who was found not guilty of similar violations in a hearing before Cuevas (*see id.* ¶ 8)), "one of you has to take the [f]all." (*Id.* ¶ 10.) After being found guilty, Plaintiff was sent back to administrative segregation. (*Id.*)

After the hearing, Plaintiff received a letter denying his request to review log books, which explained that the logs are confidential under 15 California Code of Regulations Section 3321. (*Id.* ¶ 11 & n.5.) Plaintiff subsequently submitted requests for evidence to support an administrative appeal of the guilty finding at his disciplinary hearing but did not receive the materials he sought. (*See id.* ¶¶ 12–14.) In his appeal, Plaintiff argued that prison officials abused their discretion and violated his due process rights by "neglecting and refusing to perform their duties" to "provide [Plaintiff] with the means to" defend himself. (*See id.* ¶ 15.) His appeals were denied. (*See id.* ¶ 16.) Plaintiff further alleges that "[o]n October 11, 2018 Plaintiff filed a petition for writ of habeas corpus" in Superior Court "requesting 'evidentiary hearing request' in regards to [incident] at 'RJD_CF' on 2.16.19," which was denied on the merits. (*Id.* ¶¶ 17–18.) Although it is unclear, there is some indication in the Complaint that this petition related to the same or similar matters at issue in this case. (*See id.* ¶ 32 (alleging that the "habeas request in state court would have proven [Plaintiff's] 'not guilty' claim and proven his innocence"); *but see id.* at 6 (showing that Plaintiff checked "no" in response to question whether he filed other lawsuits dealing with the same or similar facts at issue in the case).)

Plaintiff alleges that Warden Paramo and Lieutenant Cuevas violated his Fourteenth Amendment due process rights by denying or neglecting his repeated requests for access to documents and witnesses. (*See id.* ¶¶ 19–31.) With respect to Warden Paramo, Plaintiff alleges a number of failures of oversight, including failing to "oversee all . . . custody and discipline of inmates," "knowingly and willingly allow[ing] Plaintiff" to be denied the opportunity to prepare a defense, and failing to ensure fair procedures for disciplinary proceedings. (*See id.* ¶¶ 19–22.) He also alleges that Warden Paramo violated due process by not following various procedures or regulations (including those governing cell searches

and the confidentiality of the log books), and violated the rule in *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to provide exculpatory evidence to Plaintiff and by allowing prison officials to falsely represent to Plaintiff that the log books were confidential. (*See id.* ¶¶ 25–31.) Plaintiff's allegations against Lieutenant Cuevas largely mirror those against Warden Paramo, although Plaintiff alleges that Lieutenant Cuevas was directly responsible for denying his requests for evidence at the hearing. (*See id.* ¶ 10; *see also id.* ¶¶ 19–31.)

In addition to the due process claim outlined above, Plaintiff alleges that Defendants violated his right to equal protection. (*See id.* ¶ 39.) Specifically, Plaintiff argues that there is no rational basis for treating him differently from his former cellmate who was found not guilty of disciplinary violations in connection with the search of their cell. (*See id.* ¶ 42.) Plaintiff characterizes this as a "disparate impact" and discrimination on account of Plaintiff's unspecified "history in prison," and argues that the difference in treatment was not "important to governmental objectives." (*See id.* ¶¶ 40–42.)

### C. **Analysis**

#### 1. **Due Process**

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974)). "Such protections include the rights to

call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.*; *see also Wolff*, 418 U.S. at 566 (explaining that an inmate must be afforded an opportunity "to call witnesses and present documentary evidence in his or her defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals").

The procedural protections in *Wolff*, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano*, 345 F.3d at 1077 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)). While the level of hardship necessary to show a liberty interest must be determined on a case-by-case basis, "[t]ypically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (collecting cases); *see also Sandin*, 515 U.S. at 486 ("[D]isciplinary segregation, with insignificant exceptions, mirror[s] those conditions imposed upon inmates in administrative segregation and protective custody.").

Thus, to allege a due process violation, Plaintiff must allege "sufficient factual content that allows the court to draw the reasonable inference" that his time in administrative segregation imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. *See Iqbal*, 556 U.S. at 678; *Sandin*, 515 U.S. at 483–84. Plaintiff's Complaint fails to allege any facts demonstrating that, for example, Plaintiff's time in administrative segregation potentially affected the length of his sentence, or that it constituted a "dramatic departure from the basic conditions" of confinement. *See Sandin*, 515 U.S. at 485; *see also May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (concluding that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement); *Toussaint v. McCarthy*, 801 F.2d 1080, 1091 (9th

Cir. 1985) (finding that administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration), *abrogated in part on other grounds by Sandin*, 515 U.S. at 486. The sole "atypical and significant" hardship alleged by Plaintiff is his placement in administrative segregation. (*See* Compl. ¶¶ 25, 34.) Thus, Plaintiff's due process claim must be dismissed.

To the extent Plaintiff alleges due process violations stemming from the failure to adhere to protocols for cell searches or regulations governing the disclosure of confidential information to inmates, those allegations fail to state a claim for an additional reason. (*See* Compl. ¶¶ 26–27.) Prison regulations are "primarily designed to guide correctional officials in the administration of a prison" and are "not designed to confer rights on inmates." *Sandin*, 515 U.S. at 481–82. As a result, the claim that Defendants violated Plaintiff's due process rights by "fail[ing] and refus[ing] to obey by, and follow California['s] CDCR Title 15 §§ and [guidelines]," or by asserting that the log books Plaintiff requested are confidential under state regulations must be dismissed. (Compl. ¶ 28; *see also id.* ¶ 27.)

Plaintiff's allegation that Defendants violated *Brady* by not providing him with the evidence and witnesses he sought is also insufficient. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. No controlling authority holds that *Brady* applies in prison disciplinary proceedings. *See Alexander v. Keener*, No. 3:12-cv-00535-MMD-VPC, 2014 WL 11370450, at *3 (D. Nev. Mar. 26, 2014). And in any event, Plaintiff has not alleged the necessary elements of a *Brady* claim. *See Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011) ("To state a claim under *Brady*, the plaintiff must allege that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff.").

Finally, Plaintiff's claims[2] against Warden Paramo must be dismissed because supervisors may be held individually liable in a Section 1983 suit only if they engaged in some "culpable action, or inaction, [that] is directly attributed to them." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Supervisors like Paramo "cause[]" a constitutional deprivation if they (1) personally participate in or direct a subordinate's constitutional violation; or (2) the constitutional deprivation can otherwise be "directly attributed" to the supervisors' own culpable action or inaction, even though the supervisors were not "physically present when the [plaintiff's] injury occurred." *Id.* at 1206–07; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (holding a supervisor may be held liable under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation").

Plaintiff does not offer any "factual content" that would allow the Court to "draw the reasonable inference" that Warden Paramo *personally* participated in any of the allegedly unconstitutional conduct that caused him harm, or that the alleged conduct could otherwise be "directly attributed" to him. *Iqbal*, 556 U.S. at 568 ("[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to show entitlement to relief). Rather than allege direct participation by Warden Paramo in any of the alleged constitutional violations, the Complaint relies on conclusory allegations that, for example, Warden Paramo "refused to meet [his] respons[i]bility," "failed and refused to p[er]form [his] duties and responsibilit[ie]s," and did not instruct subordinates to provide Plaintiff with documents. (*See, e.g.*, Compl. ¶¶ 19, 21, 36.) If Plaintiff wishes to bring claims against Warden Paramo (or any other supervisory employee), he must allege how that person personally participated in or otherwise caused the allegedly unconstitutional conduct at issue in the Complaint.

---

[2] This includes Plaintiff's allegation that Warden Paramo denied him equal protection, which is discussed more fully below in Section II.C.2.

## 2. Equal Protection

Plaintiff alleges that Defendants violated his right to equal protection by treating him differently from his cellmate, who was found not guilty of disciplinary violations stemming from the cell search. (*See id.* ¶¶ 39–42.) In Plaintiff's view, this difference in treatment was irrational, and did not serve any "important . . . governmental objectives," other than discrimination against him based on his "history in prison." (*Id.* ¶ 42.)

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburn v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985). "Equal protection rights are violated when (1) a person is a member of an identifiable class; (2) that person is intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's Complaint contains several misstatements of the law governing equal protection claims. First, although Plaintiff purports to rely on the Fifth Amendment, the Fifth Amendment does not contain an equal protection clause. In any event, however, "the concepts of equal protection and due process . . . are not mutually exclusive," *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954), and "Equal Protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley v. Valeo*, 424 U.S. 1, 93 (1976). Second, and more importantly, Plaintiff asserts that Defendants' actions caused a "disparate impact," which should be subject to intermediate scrutiny. (*See* Compl. ¶¶ 40, 42.) But there is no allegation that Plaintiff is a member of a "suspect class," so, rational basis scrutiny applies to Plaintiff's claim. *See Vill. of Willowbrook*, 528 U.S. at 564 (holding rational basis scrutiny applies to equal protection claims not implicating a suspect classification); *see also Heller v. Doe*, 509 U.S. 312, 319–21 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is

accorded a strong presumption of validity."). And disparate impact—a type of claim available under certain federal statutes like Title VII and the Fair Housing Act—is irrelevant to Plaintiff's equal protection claim. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2525 (2015) (affirming that disparate impact claims are cognizable under, among other federal statutes, the Fair Housing Act and Title VII); *see also Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 273 (1979) ("[T]he Fourteenth Amendment guarantees equal laws, not equal results.").

Setting aside these misstatements of law, and liberally construing Plaintiff's Complaint, Plaintiff still fails to state a claim for denial of equal protection. Plaintiff must allege that he was "intentionally treated differently from others similarly situated," but his Complaint does not offer any "factual content" that would allow the Court to "draw the reasonable inference" that any difference in treatment was intentional. *See Vill. of Willowbrook*, 528 U.S. at 564; *see also Iqbal*, 556 U.S. at 568 ("[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to show entitlement to relief). Plaintiff's Complaint alleges that Defendants "denied Plaintiff[] [equal protection] intentional[l]y which imposed a disparate impact by itself on Plaintiff['s] life by leading to his fals[e] placement into [administrative segregation]," but Plaintiff does not allege any facts to support this conclusion. (Compl. ¶ 40.) These conclusory allegations are insufficient. *See George v. Uribe*, No. 11-CV-70 JLS (RBB), 2012 WL 993243, at *6 (S.D. Cal. Mar. 23, 2012) (allegations that defendants "intentionally treated Plaintiff differently from others" were insufficient without supporting facts). Additionally, Plaintiff fails to allege any facts from which the Court could conclude that Defendants' actions were irrational or lacked a legitimate penological interest other than Plaintiff's vague allusion to his undescribed "history in prison." (*See* Compl. ¶ 42); *see Barbarin v. Dep't of Corrs. & Rehab.*, No. 3:19-cv-1714-JAH-RBB, 2019 WL 5454435, at *4 (S.D. Cal. Oct. 24, 2019) (holding plaintiff "fail[ed] to allege any facts from which the Court could conclude that [Defendants'] policy . . . lacks a rational or penological interest").

### D. Leave to Amend

For all these reasons, the Court dismisses Plaintiff's Complaint for failing to state a Fifth or Fourteenth Amendment claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Watison*, 668 F.3d at 1112. Given Plaintiff's pro se status, however, the Court will grant Plaintiff leave to amend his pleading deficiencies, if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

## III. Conclusion and Order

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

5. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. See S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint **on or before February 13, 2020**, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

**DATED: December 30, 2019**

Hon. Cynthia Bashant
United States District Judge